IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MUNS WELDING & MECHANICAL, INC.,  *
                                  *
      Plaintiff,               *
                                  *
        v.                 *            CV 115-017
                                  *
BOARD OF TRUSTEES OF THE      *
PLUMBERS & STEAMFITTERS LOCAL   *
NO. 150 PENSION FUND, et al.,   *
                                  *
      Defendants.           *

---

## O R D E R

---

This case arises out of a dispute between Plaintiff Muns Welding and Mechanical, Inc. ("Muns Welding"); Charles Hardigree ("Hardigree"); and Plumbers and Steamfitters Local No. 150 Pension Plan and Fund and the Board of Trustees of the Plumbers and Steamfitters Local No. 150 Pension Fund (collectively "the Pension Fund").[1] Muns Welding asserts six claims for declaratory and injunctive relief regarding the suspension of its contributions to the Pension Fund, its right to litigate in this

---

[1] As to the Pension Fund, Muns Welding named (1) the Board of Trustees of the Plumbers and Steamfitters Local No. 150 Pension Fund and (2) Plumbers and Steamfitters Local No. 150 Pension Plan and Fund as Defendants. These Defendants aver that the proper party is the "Plumbers and Steamfitters Local No. 150 Pension Fund." Muns Welding responds that ERISA allows a pension plan to be sued. Moreover, a party that controls the administration of a pension plan is a proper party. See Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (per curiam). For the purposes of the present motions to dismiss, Defendants have agreed that the same reasons for dismissal apply to all of the Pension Fund Defendants. Because the Court ultimately finds that the Pension Fund's Motion to Dismiss should be granted, it need not address the merits of the Pension Fund's argument regarding proper parties.

Court, its right to abatement of withdrawal liability, and its effective exclusion from the Plumbers and Steamfitters Local 150 ("the Union"). These six claims all stem from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, with Muns Welding specifically seeking to enforce provisions of the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.* Additionally, Muns Welding states three state law tort claims against Hardigree for malicious interference, tortious interference, and slander per se, and also seeks injunctive relief from Hardigree's conduct.[2] Now before the Court are motions to dismiss filed by the Pension Fund (doc. 18) and Hardigree (doc. 17).

## I.  BACKGROUND

Muns Welding is a mechanical contracting company that employs members of the Union. (Compl., Doc. 1, ¶ 3.) At all pertinent times, Hardigree served as the Union's business manager, an elected position. (Id. ¶ 6.) Muns Welding has

---

[2]    One of the Pension Fund's bases for its motion to dismiss is that Muns Welding's complaint is a shotgun pleading. The Pension Fund argues, *inter alia*, that "Plaintiff fails to specify which claims are brought against which defendant." (Doc. 18 at 8.) The Court notes that the Pension Fund was able to file its motion to dismiss as to the ERISA/MPPAA claims without difficulty and correctly left the state tort law claims for Defendant Hardigree to address. Thus, the Pension Fund's interpretation of the motion to dismiss was consistent with Muns Welding's response, which lists claims ones through six as the substantive claims applicable to the Pension Fund. (Doc. 38 at 3-4.) As Muns Welding states in its reply to Hardigree, it seeks to invoke the Court's supplemental jurisdiction for the tort claims against Hardigree.

2

contributed to the Union's Pension Fund since 1989. (Id. ¶ 7.)
Lee Muns ("Muns"), the President of Muns Welding, served as
President of the Augusta Mechanical Contractors Association
("AMCA") and, in that capacity, was responsible for negotiating
the renewals of any bargaining agreements with the Union. (Id.)

## A.    Muns' Early Difficulties with Hardigree

According to Muns Welding, the Pension Fund was almost
fully funded from 1998 to 2000, but to ensure re-election,
Hardigree convinced the other trustees to amend the Pension Fund
and increase the unfunded liability. (Id. ¶ 8.) Muns objected
to these actions and alleges that Hardigree and other trustees
verbally warned him to "stop interfering and questioning the
management of the Pension Fund." (Id. ¶¶ 9-11.) In
retaliation, Muns Welding alleges that Hardigree and some
trustees "engaged in an open campaign to drive it out of
business."[3] (Id. ¶ 12.)

During negotiations in 2009 to renew the collective
bargaining agreement ("CBA"), Hardigree

> usurped the role of the selected negotiators, invited
> other contractors to the negotiation

---

[3]    Muns Welding alleges that Hardigree openly expressed his distaste for
Muns, misrepresented that Muns Welding is on the verge of going out of
business, and is trying to force Muns Welding to pay withdrawal liability.
(Compl. ¶ 12.) Moreover, Muns Welding alleges that following Muns' efforts
to obtain for contractor employers the right to elect a member of the Board
of Trustees, Hardigree engineered an amendment to the Trust Agreement
disqualifying from service any contractor employer that has failed to make a
contribution by the last day of the month that it was due. (Id. ¶ 13.)
This, according to Muns Welding, has been termed by other contractor
employers the "Lee Muns Amendment." (Id.)

meetings, . . . and then terminated the negotiations and informed Lee Muns that the Union refused to bargain in good faith but rather insisted that the AMCA contractors accept the same contract that all the other contractors allegedly had accepted.

(Id. ¶ 14.)  As a result, the Union and the AMCA filed charges for unfair labor practices with the National Labor Relations Board ("NLRB"), which declined jurisdiction.  (Id.)  Both parties were thereafter able to negotiate a new CBA.  (Id.)

**B.    The 2013 CBA Negotiations**

The CBA negotiated in 2009 expired on September 30, 2013. (Doc. 3, Ex. 10.)  As in 2009, Muns Welding alleges that Hardigree refused to bargain in good faith, instead insisting that the AMCA accept the same contract in place with all other contractors.  (Compl. ¶ 15.)  Purportedly because the NLRB previously declined jurisdiction over the same violation in 2009, the AMCA did not file another unfair labor charge.  (Id. ¶ 16.)  Instead, Muns sent a series of letters and e-mails trying to convince Hardigree to negotiate a new CBA, which are summarized as follows:

- June 5, 2013: Muns sent a letter to Hardigree setting forth the terms he would like to negotiate.  (Doc. 3, Ex. 9-2.)

- October 7, 2013: Muns sent Hardigree a letter offering responses to items presented during a July 25, 2013 meeting and a September 16, 2013 meeting.  (Id., Ex. 9-3.)

- October 24, 2013: Muns sent Hardigree a letter after an October 15, 2013 meeting summarizing

what issues were resolved and what issues remained outstanding. (Id., Ex. 9-4.)

- November 5, 2013: Hardigree e-mailed Muns stating that the Union had negotiated in good faith and, based on the October 24, 2013 letter, the parties were at an impasse. This e-mail additionally cancelled a meeting set for November 7, 2013, purportedly because Hardigree learned that Muns Welding "fabricated and installed a project for Ameresco at SRS and this project was done non-union[.]" The e-mail went on to say that the Union believed that Muns Welding was not negotiating in good faith and that it would offer the AMCA the CBA in place with all other contractors. (Id., Ex. 9-5.)

- November 7, 2013: Muns replied to Hardigree in an e-mail stating that the AMCA was attending the originally-scheduled meeting. (Id., Ex. 9-6.)

- November 8, 2013: Muns sent Hardigree an e-mail stating that the AMCA attended the meeting to negotiate, that the AMCA remained interested in negotiation, and requested a new meeting date. (Id., Ex. 9-6.)

- November 13, 2013: Muns sent another e-mail to Hardigree asking for a new meeting date. (Id., Ex. 9-7.)

- November 18, 2013: Muns sent a third e-mail requesting a meeting date. (Id., Ex. 9-7.)

- November 18, 2013: Hardigree responded to Muns' multiple e-mails saying "we are offering AMCA the CBA we have in place with all other contractors. We do not feel we need any other meetings to negotiate any further." (Id., Ex. 9-7.)

- November 19, 2013: Muns sent Hardigree a letter with the AMCA's "best and last offer." In that letter, Muns emphasized the AMCA's desire for a contract with the Union. In this letter, Muns also reminded Hardigree that the AMCA had met

with the Union eight times over approximately four months. (Id., Ex. 9-8.)

The next communication between Muns and Hardigree appears to be over a year later, on December 10, 2014, when Muns e-mailed Hardigree restating his request for a copy of the current local CBA, informing Hardigree of the business difficulties Muns Welding faced,[4] and stating that Muns Welding was willing to put the impasse behind them. (Id., Ex. 9-9.) Muns then sent a second e-mail on December 15, 2014, requesting that Hardigree provide manpower for Muns Welding. (Id., Ex. 9-9.) A third correspondence was sent via certified mail on January 5, 2015 in which Muns again requested manpower, but Hardigree struck through his name and address on the envelope and hand-wrote "Refused 1/7/15." (Id., Ex. 9-10.)

## C. Withdrawal from the Pension Fund

Counsel for the Pension Fund sent a Notice and Demand letter to Muns Welding on December 1, 2014 demanding payment of $2,416,913.00 in withdrawal liability from the Pension Fund. (Id., Ex. 10.) According to the letter, Muns Welding permanently ceased to have an obligation to contribute to the Pension Fund and continued to engage in the same type of work for which it previously contributed to the Pension Fund, which

---

[4]    Plaintiff alleges that as a result of the impasse and Hardigree's vendetta against Muns Welding, it has not received a single request from any of the federal contractors at the Savannah River Site, who are all signatories to a Project Labor Agreement with the Union. (Compl. ¶ 22.)

triggered withdrawal liability under *ERISA* Section 4203(b). (Id.) Pursuant to ERISA Section 4219(c)(2), payment of withdrawal liability to the Pension Fund was to commence no later than 60 days after the date of the letter. Thus, the letter stated that $59,491.40 was due on January 30, 2015. (Id.) Moreover, the letter instructed that within 90 days Muns Welding could request that the trustees review the withdrawal liability. (Id.) In response to the demand letter, counsel for Muns Welding (1) requested review of the withdrawal liability and (2) submitted an application of abatement of withdrawal liability. (Id., Ex. 9.)

On March 11, 2015, Muns Welding filed a Motion for Preliminary Injunction. (Doc. 30.) As a result of that Motion, the Court held a telephone conference on March 13, 2015. During the conference, the Court expressed its reservation over ruling on Muns Welding's Motion for Preliminary Injunction when the Pension Fund and Hardigree raised jurisdictional issues in their motions to dismiss. Accordingly, the Court entered an expedited briefing schedule for the motions to dismiss and the preliminary injunction.

## II. **MOTION TO DISMISS STANDARD**

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether

the plaintiff will ultimately prevail on the merits. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. <u>See Hoffman-Pugh v. Ramsey</u>, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>


### III. <u>DISCUSSION</u>

The dispute between Muns Welding and the Pension Fund, though entangled in an extraordinarily complex statutory scheme, is actually quite straightforward. The Pension Fund determined that by failing to execute a new CBA, Muns Welding ceased to have an obligation to contribute to the Pension Fund and was

thus subject to withdrawal liability under the MPPAA because it continued to perform work in that jurisdiction. (Doc. 3, Ex. 10.) Muns Welding, however, maintains that it is covered by a statutory exception for suspensions of contributions that occur during labor disputes. As to Hardigree's Motion to Dismiss, Muns Welding asserts only state tort law claims, which Hardigree alleges should be dismissed as preempted by the National Labor Relations Act ("NLRA").[5]

## A.    Withdrawal Liability Under the MPPAA

Under the MPPAA, if an employer withdraws from a multiemployer plan, then that employer is liable to the plan in an amount to be determined in accordance with the MPPAA. 29 U.S.C. § 1381(a). Even so, an employer may escape liability for its withdrawal if it "suspends contributions under the plan during a labor dispute involving its employees." Id. § 1398(2).

Procedurally, upon the employer's withdrawal of contributions to the Pension Fund, the plan sponsor must determine the amount of liability, set up a payment plan, and notify the employer of the fee assessment and schedule. 29 U.S.C. §§ 1382, 1399(b)(1). Within 90 days of this notification, the employer may request that the sponsor review the liability determination, which Muns Welding did. Id.

---

[5]    Hardigree also argues in his reply brief that if Muns Welding seeks to invoke supplemental jurisdiction and this Court dismisses the ERISA/MPPAA claims against the Pension Fund, then this Court should exercise its discretion to dismiss the pending state law claims as well.

§ 1399(b)(2)(A).  "After a reasonable review of any matter raised," the sponsor shall then notify the employer of its decision and basis.  Id. § 1399(b)(2)(B).  If dissatisfied with this review, Congress mandates arbitration.  Indeed, "[a]ny dispute between an employer and the plan sponsor of a multiemployer pension plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."  Id. § 1401(a)(1).  "Upon completion of the arbitration proceedings[,]" either party may bring an action in the appropriate district court "to enforce, vacate, or modify the arbitrator's award."  Id. § 1401(b)(2).

The MPPAA's arbitration requirement is *not* a jurisdictional prerequisite, but rather a compulsory stage of the administrative process.  Cent. States Se. & Sw. Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 328 (5th Cir. 1987) (listing cases holding the same).  There are some "practical exceptions" to the requirement of exhaustion of remedies "which result from the efforts of the courts to balance the rights of the claimants against the substantial policy factors favoring the rule. *These exceptions apply, however, only in extraordinary circumstances.*"  Id. at 329 (internal quotations and citations omitted).

**B.    The Pension Fund's Motion to Dismiss**

The crux of the Pension Fund's motion to dismiss is that the MPPAA mandates all disputes over withdrawal liability first be submitted to arbitration, and it is undisputed that Muns Welding's claims would fall under the MPPAA's arbitration mandate.[6]    In response, Muns Welding argues that it falls under an exception to this general requirement because resolution of its dispute requires statutory interpretation.    This exception, which the Eleventh Circuit Court of Appeals recognized in Carriers Container Council, Inc. v. Mobile S.S. Ass'n et al., 896 F.2d 1330 (11th Cir. 1990), excuses arbitration only in "rare cases[.]"    Id. at 1345 (citing Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1253 (3d Cir. 1987)).

In Carriers, the Court of Appeals held that the district court did not err in failing to first submit the case to arbitration, as "the only question that was before the district court was whether CCC is an 'employer' under the MPPAA."    Id. at 1344-45.    There, the court held that "when a party seeks a determination from a court that it was never an employer under the MPPAA the court may rule on the issue."    Id. at 1345.    In so holding, the court set forth the following four factors as

---

[6]    The Pension Fund additionally argues that this Court lacks jurisdiction to provide the relief sought and that Muns Welding's complaint is an improper shotgun pleading.    However, because the Court finds that the case must first be remanded to arbitration, it does not address these other bases.

11

influential in its decision: (1) the issue was one of statutory interpretation; (2) the suit was filed before the time to initiate arbitration had run; (3) judicial economy would be served by the district court's resolution of the issue because the employer was likely to appeal any adverse ruling;[7] and (4) "an arbitrator would not have helped to develop a factual record on the issues of statutory interpretation or on the issue of withdrawal because both parties agree[d]" on the material facts. Id. Once the court determined that the company qualified as an "employer" under the statute, the issue of withdrawal liability "was in effect decided." Id. Although Muns Welding relies heavily on this case to support its decision to bypass arbitration, this Court finds the Carriers reasoning, though sound, is inapplicable to the present case.

At the most basic level, the Carriers court was addressing undisputed factual circumstances and was solely interpreting the statutory definition of "employer." Indeed, the precise issues before *this* Court — withdrawal liability and the applicability of an exception — were either not at issue or conclusively established in Carriers. There, the only way for the company to escape withdrawal liability was to fall outside the definition of "employer" and thus outside the MPPAA. The applicability of

_____
[7] Implicit in the court's handling of this factor is that only the arbitrator's *findings of fact* are entitled to any deference under the statute, and any statutory interpretation or conclusions of law would be reviewed without deference.

the labor dispute exception was never at issue and the attendant circumstances of the conflict were undisputed. Notwithstanding the district court's role in deciding whether the company was an employer and thus subject to withdrawal liability, it remanded the remaining *factual* issue — the amount of liability — to the arbitrator. Thus, contrary to how Muns Welding frames Carriers, the district court did not engage in any sort of fact-based inquiry as to the issue of withdrawal liability.

Turning to the other factors utilized in Carriers, the court seemed particularly concerned with judicial economy and the lack of factual dispute. This makes sense. Mandating that the parties first submit to arbitration where (1) the only issue is one of statutory interpretation, (2) the facts are undisputed, and (3) the non-prevailing party is likely to appeal would be a gross waste of both the arbitrator's and court's resources given that the arbitrator's legal conclusions are afforded no deference. Here, the same concerns simply do not apply. Whether a labor dispute existed will require findings of fact. As detailed above, the dispute between Muns and Hardigree dates back into the 1990s and whether the labor dispute concluded or was ongoing must be established.[8] An arbitrator's

---

[8]    Muns Welding argues in its brief that the exact nature of the factual dispute is unknown because Defendants have not yet filed an answer. This uncertainty equally weighs in favor of arbitration. Surely it was not Congress's intent, with a clear arbitration mandate, to allow parties to bypass arbitration and litigate through discovery and summary judgment to

findings on these issues would and should be entitled to deference. Indeed, it was Congress's clear intent that the arbitrator make the findings of fact. See Bd. of Trs. Of Trucking Emps. Of N.J. Welfare Fund, Inc. v. Centra, 983 F.2d 495, 506 (3d Cir. 1992) ("By generally mandating arbitration in the first instance with review by a federal court, MPPAA has created arbitrators who are experts in applying the technical provisions of how and when to assess withdrawal liability.").

Finally, in holding that the parties need not first submit to arbitration, the Carriers court relied on two other Court of Appeals cases. First, the court cited the Second Circuit's opinion in Park S. Hotel Corp. v. N.Y. Hotel Trades Council, 851 F.2d 578, 582 (2d Cir. 1988), for the proposition that a district court may allow the parties to bypass arbitration where, inter alia, the parties agreed that it was unnecessary. Second, the Carriers court cited Flying Tiger, 830 F.2d at 1253, for the proposition that arbitration was unnecessary where it would not help to develop a factual record to assist the district court. Neither of these factors is present in this case. For one, given the motion to dismiss in this action, it is quite obvious that the parties disagree on the necessity of

determine the nature of any factual disputes. Moreover, Muns Welding itself recognizes that whether a labor dispute existed is inherently factual, when it says "the primary dispute before this Court involves withdrawal liability under the [MPPAA], and the events that Defendants allege were the triggers for the assessment of withdrawal liability (the occurrence of which Plaintiff disputes)[.]" (Doc. 39 at 4-5 (emphasis added).)

arbitration. Moreover, as discussed above, the Court finds that arbitration could assist in the development of a factual record. This last fact cannot be overstated. The role of the arbitrator is to establish a factual record. In Carriers, there was no such need, as all relevant facts were undisputed and the only issue before that court was whether the company qualified as an employer.

Having determined that the factors relied on in Carriers are not met in the present case, the Court is faced with the decision of one district court in Atlanta on the one hand and on the other a significant number of district and appellate decisions from across the country holding the opposite. In Sheet Metal Workers' Pension Fund, Local Union No. 85 et al. v. Adv. Metal & Welding Corp., 654 F. Supp. 219 (N.D. Ga. 1986), the district court was faced with a seemingly identical issue to that before the Court today when an employer sought to bypass arbitration and invoke the labor dispute exception in Section 1401. Sheet Metal, 654 F. Supp. at 221. The district court held "[w]here a dispute concerning a withdrawal liability determination turns on the meaning of a certain provision of the MPPAA, there is no reason for requiring exhaustion of the arbitration remedy since an arbitrator's interpretation of the statute would be entitled to no deference." Id. at 223-24. Thus, because the court had to rule as to the definition of a

15

particular phrase in the MPPAA, it found that submitting the case to arbitration would be unnecessary.[9]

The MPPAA does not define "labor dispute," and the Court finds no case in which the Eleventh Circuit or Supreme Court have done so. Thus, Muns Welding is correct that this Court must engage in some statutory interpretation to apply the exclusion here. However, as Muns Welding recognizes in its brief, courts have adopted the definition of "labor dispute" used in related federal labor legislation, leaving little "interpretation" for this Court to do. (Doc. 38 at 11.) The Court strains to believe that Congress, or the Eleventh Circuit Court of Appeals, intended for district courts to excuse arbitration in any case where *some* question of statutory interpretation might arise. To bypass arbitration in every such instance would allow the exception — which is supposed to be excused only in "rare" and "extraordinary" cases — to swallow the rule. Thus, Muns Welding's attempt to expand the Eleventh Circuit's clear holding in <u>Carriers</u> — that the definition of employer is one of statutory interpretation — *to include cases* involving mixed questions of law and fact must fail. Consistent with <u>Carriers</u>' more limited holding, the Sixth Circuit Court of

---

[9]     In <u>Sheet Metal</u>, like <u>Carriers</u>, there does not appear to be any disputed facts.  Indeed, that court focused its analysis on the *competing definitions* of "labor dispute" and "suspension of contributions" and, after ruling on the definitions of the phrases, granted summary judgment for the employer.   <u>Sheet Metal</u>, 654 F. Supp. at 224-26.

Appeals has recognized just three exceptions to the arbitration requirement in the MPPAA: (1) where the employer mounts a facial constitutional attack, (2) where the employer submits a verifiable claim that arbitration would lead to irreparable harm, and (3) *"the determination of whether a company is an 'employer' within the meaning of the MPPAA."*[10] Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund, 726 F.3d 738, 755 (6th Cir. 2013).

Excusing compliance with the arbitration mandate whenever mixed questions of law and fact are presented would render the very clear language of Section 1401 meaningless. See I.A.M. Nat'l Pension Fund v. Clinton Engines Corp., 825 F.2d 415, 422 (D.C.C. 1987) ("[Carving out an exception based on statutory interpretation], moreover, would yield few countervailing benefits. After all, only in unusual cases are there apt to be *no* disputed facts. The expenditure of judicial resources necessary to identify this handful of cases would likely outweigh whatever efficiencies might be gained by pretermitting arbitration in these cases."); Grand Union Co. v. Food Emps.

---

[10] A number of courts have recognized this exception. See Transpersonnel, Inc. v. Roadway Exp., Inc., 422 F.3d 456, 459 n.1 (7th Cir. 2005) (holding "the threshold question of whether a company is an 'employer' may be submitted to a court prior to arbitration"); Rheem Mfg. Co. v. Cent. States Se. & Sw. Areas Pension Fund, 63 F.3d 703, 705-06 (8th Cir. 1995) (same); Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund, 852 F.2d 156, 167 (6th Cir. 1988) (listing cases and recognizing a "narrow exception to the arbitration requirement" that "allows a company to bypass arbitration for the limited purpose of determining whether it is an 'employer' within the meaning of section 1401(a)(1).").

Labor Relations, Inc., 808 F.2d 66, 70 (D.C.C. 1987) (holding that a statutory interpretation exception "would drastically diminish the prime role Congress so plainly assigned to arbitration in the MPPAA dispute resolution scheme"); Crown Clothing Co. v. Papale, 854 F. Supp. 316, 320 n.3 (D.N.J. 1994) ("While these disputed issues will likely be informed by both statutory interpretation and factual inquiry, 'any doubt concerning fact/law differentiation as a means of determining whether arbitration is appropriate should be resolved in favor of arbitration.'" (quoting Carl Colteryahn Dairy, Inc. v. W. Penn. Teamsters & Emps. Pension Fund, 847 F.2d 113, 123 n.17 (3d Cir. 1988) (internal alteration omitted))).

The great weight of authority across the country, addressing precisely this issue, has deviated from the reasoning of Sheet Metal and concluded that "arbitration reigns supreme under the MPPAA." In re BFW Liquidation, L.L.C., 459 B.R. 757, 774 (Bankr. N.D. Ala. 2011) (quoting I.A.M., 825 F.2d at 422)). See, e.g., Findlay Truck Line, 726 F.3d at 754 ("Whether [the employer's] dispute falls within the scope of § 1398(2) is a question for the arbitrator."); Cent. States v. Bomar Nat'l, Inc., 253 F.3d 1011, 1016 (7th Cir. 2001) (holding that whether the employer fits within the labor dispute exception "is not for this court to decide"); Crown Clothing, 854 F. Supp. at 319-20 (holding that whether an impasse constituted a labor dispute is

18

a dispute of fact that must be "put to the expertise of an arbitrator").

Muns Welding finally argues that requiring it to pay the quarterly installments to participate in arbitration would be unfair and create "a huge hammer for any union," as "[t]he union can simply stop bargaining and wait for the trustees to drop the hammer of withdrawal liability on contractors who do not get in line with the contract the union has in place with all other contractors."   (Doc. 38 at 10 (internal quotations omitted).) The Court, in granting the Pension Fund's Motion to Dismiss, in no way seeks to minimize the financial strain that might be placed on Muns Welding, but it cannot ignore binding precedent that dictates "pay now, dispute later" is the name of the game. Indeed, the Supreme Court has recognized that "[e]ven if the employer challenges the trustees' withdrawal liability determination, however, it still must pay according to the trustees' schedule in the interim under the statute's 'pay now, dispute later' collection procedure."   Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cali., Inc., 522 U.S. 192, 197 (1997) (internal quotations omitted).

Based on the foregoing, the Court finds that Claims One through Six are preempted by the MPPAA's arbitration requirement and shall be dismissed.

## C.  Hardigree's Motion to Dismiss

Hardigree moves to dismiss the state tort law claims asserted against him on the grounds that such clams are preempted by the NLRA.   Without addressing the preemption concern, the Court recognizes that Muns Welding's claims resound in state tort law.   Accordingly, Muns Welding urges this Court to exercise supplemental jurisdiction over them.

28 U.S.C. § 1367 governs supplemental jurisdiction and provides:

> [I]n any civil action of which the district courts
> have original jurisdiction, the district courts shall
> have supplemental jurisdiction over all other claims
> that are so related to claims in the action within
> such original jurisdiction that they form part of the
> same case or controversy under Article III of the
> United States Constitution.

28 U.S.C. § 1367(a).   District courts may, however, decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

As detailed above, the Court dismisses all of the claims rooted in federal law in favor of Congress's provision in the MPPAA mandating arbitration.   Accordingly, and pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law tort claims.   See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining

state claims when, as here, the federal claims have been dismissed prior to trial."). Claims Seven through Ten are thus **DISMISSED WITHOUT PREJUDICE.**

## IV.   CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Pension Fund's Motion to Dismiss (doc. 18). Claims One through Six thus are **DISMISSED WITHOUT PREJUDICE.** Moreover, Hardigree's Motion to Dismiss (doc. 17) is similarly **GRANTED,** as the Court declines to exercise supplemental jurisdiction over the state tort allegations in Claims Seven through Ten. As such, those claims are **DISMISSED WITHOUT PREJUDICE.** Finally, Claims Eleven through Thirteen are also **DISMISSED WITHOUT PREJUDICE** by virtue of the aforementioned rulings. The Clerk is **DIRECTED** to **CLOSE** this case and **TERMINATE** all pending motions.

**ORDER ENTERED** at Augusta, Georgia, this 2nd day of April, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

21